UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JAMES E. HARPER,

        Plaintiff,

v.                                                        Case No. 09-CV-88

CITY OF KENOSHA, OFFICER FRANKLIN,
OFFICER LARSEN, OFFICER MELICHOR,
OFFICER ALFREDSON and JOHN DOE,

        Defendants.

# ORDER

The plaintiff, James Harper, who is incarcerated at the Kenosha County Detention Center, filed a *pro se* civil rights complaint under 42 U.S.C. § 1983, alleging that his civil rights were violated during his arrest. This matter is before the court on the defendants' motion for summary judgment.

## SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if

"the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

## FACTUAL BACKGROUND[1]

On September 21, 2008, the plaintiff was arrested by officers from the Kenosha Police Department. The plaintiff was identified as a suspect in three shootings that occurred at the same residence in Kenosha, Wisconsin, over a span

---

[1] The facts are taken from the parties proposed findings of fact, to the extent they are supported by admissible evidence. The court notes that the Plaintiff's Proposed Findings of Fact are drawn primarily from the depositions of the plaintiff and Officer Decker. As such, they contain some conflicting testimony.

-2-

of approximately eight hours. He subsequently was convicted of attempted first degree intentional homicide in relation to those shootings.

At about 8:00 a.m., Kenosha police officers were dispatched to the plaintiff's home, another residence in Kenosha, Wisconsin. The officers set up a perimeter around the plaintiff's home. The police were already outside the plaintiff's house when he arrived home on the morning of September 21, 2008. The plaintiff observed the officers before pulling into his driveway. He then pulled into his driveway, got out of his truck, went up the stairs onto his porch, opened his door, and went into his house. The officers were looking in the plaintiff's direction, but they did not say anything to the plaintiff or stop him.

The plaintiff was in the house for approximately ten minutes and came out carrying some supplies for his drywall job. The plaintiff opened up his truck, and then a police car pulled into the plaintiff's driveway with "all of them jumping out with guns on me telling me hands up, come around the truck and get down on the ground." (Harper Dep. 59:4-6). There was also some testimony about the plaintiff holding a cup of tea and either setting it down or dropping it. It is not clear from the plaintiff's deposition testimony whether he was holding the drywall supplies and the tea cup at the same time when he came out of the house. The officers were able to observe both of the plaintiff's hands.

There were at least four officers with guns pointed at the plaintiff and more officers were present. The plaintiff testified that he had his hands up and was trying

to get to the ground.  He put one knee down because he was not going to drop down onto concrete.  When the plaintiff put one knee down, he heard "bam, bam, bam, bam," and all of a sudden he was hit in the back with the taser multiple times. (Harper Dep. 60:19-20).  The plaintiff did not get a warning that he was going to be tased.  He thought he was complying with what they were telling him to do.

He almost lost his footing going down to the ground and momentarily lost consciousness after being tased.  He fell after the tasing and landed on the cement in his driveway.  The plaintiff testified at his deposition that someone put a foot on his head and the back of his neck while he was on the ground, but he does not know who had the foot on his head.  The plaintiff does not remember being handcuffed, and he cannot describe how Officer Franklin, Officer Larsen, Officer Melichor, or Detective Alfredson participated in his arrest.

The plaintiff suffered injuries to his face, hands, head, and jaw, and his hands were scarred and bloody from the fall onto the cement driveway.  The plaintiff was bleeding at the top of the head and bleeding on the sides.  He had several chipped teeth and one that was broken.  The plaintiff's jailers eventually gave the plaintiff some Tylenol and took him to the hospital when they were finished talking to him. An ambulance had been called to the scene to treat the plaintiff's injuries, and the plaintiff was transported by ambulance to the emergency room of the Kenosha County Hospital, where he received antibiotics, ointment and a bandage, but no stitches.  Follow up medical care was in the Kenosha County Detention Center,

where the plaintiff was given antibiotics, a cream for his wounds, and a bandage. He was also provided with these medical supplies at the Kenosha County Jail during the months after his arrest. Ten months later, the plaintiff had a tooth extracted. The plaintiff attributes the need for the tooth extraction to the fall.

Officer Jack Decker has worked for the Kenosha Police Department for twenty-four years. He attended one class and was certified in the use of a taser. A taser is an electronic device that shoots out two darts with wires attached to them. It runs a current through the body of a person and immobilizes them. The plaintiff was the first person Officer Decker had ever tased.

Officer Decker testified that the plaintiff set his drink down and stood back up after he was ordered to the ground. The plaintiff ignored continued commands to get down on the ground. After numerous commands to get on the ground, the plaintiff went down to one knee. While on one knee facing away from the officers, the plaintiff began moving his right hand towards his waistband, though he had been told to keep his hands up over his head. As the plaintiff was moving his right hand toward the waistband, Officer Decker deployed the taser one time into the plaintiff's back. Officer Decker was aware of the three shooting incidents that the plaintiff was suspected of being involved in, was concerned that the plaintiff might have a concealed weapon, and feared for his safety. Upon being tased, the plaintiff straightened up and then fell forward and hit his face on the driveway. Officer

Decker noticed some scrapes to the plaintiff's face and that he was bleeding from a scrape to his forehead.

The plaintiff has submitted a number of statements from witnesses to the plaintiff's arrest. According to Theresa Clay, "He started to go to the ground to put his glass down when the police tazed him. He fell face down on the cement. The police then handcuffed him and searched him and when they got him up he was bleeding from the face." (Exhibits to Plaintiff's Proposed Findings of Fact, also filed as p. 8 of Exhibit 2 to the Affidavit of John A. Wolfgang in Support of Defendants' Reply Memorandum). Laurel Paschke averred, "Earl motioned with his arms out wide and kept asking them what he had done as they kept yelling at him to 'get down.' He gestured with his right hand toward his left side and that is when he was tasered. When he fell the officers grabbed his arms and handcuffed him. When they raised him off the ground I saw that his forehead was bleeding profusely." (Wolfgang Aff., Ex. 3, p. 8). Kadie Clay's affidavit states, "He (the man) had turned around, with one hand up and was going to his knees to put his drinking glass down when the police tazed him. He fell to the ground face first on the cement driveway. Then a couple of officers went to him, handcuffed him and searched him. When an ambulance came, they got him up and I saw that his face was all bloody." (Wolfgang Aff., Ex. 4, p. 8).

## DISCUSSION

Defendant Officers Franklin, Larsen, Melichor, and Alfredson argue that they are entitled to summary judgment because excessive force was not used in the arrest of the plaintiff and because they are entitled to qualified immunity. Additionally, defendant City of Kenosha submits that the plaintiff has presented no evidence regarding a policy or custom of the Kenosha Police Department that impinged the plaintiff's constitutional rights, and no evidence of failure to train or failure to supervise officers.

The plaintiff's response to the defendants' motion is troubling. First, the plaintiff's arguments relate primarily to Officer Jack Decker, who is not a defendant in this case. As the plaintiff notes, although Officer Decker was named as a defendant in the caption and parties portions of the plaintiff's complaint, he was dismissed by the court at screening because the narrative portion of the plaintiff's complaint did not contain any allegations of his personal involvement. It may be true, as the plaintiff argues, that discovery revealed that Officer Jack Decker "was the culprit," in that he was the officer who used the taser on the plaintiff. (Plaintiff's Memorandum Brief, p. 4). However, the plaintiff never filed a motion to amend his complaint to name Officer Decker as a party and include allegations of personal involvement. It appears from the record that Officer Decker's deposition was taken on August 11, 2010, before the dispositive motion deadline. Thus, the plaintiff had the facts to allege Officer Decker's personal involvement early enough to bring a

motion to amend the complaint, but he did not. *See Insolia v. Philip Morris, Inc.*, 216 F.3d 596, 606 (7th Cir. 2000); *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996) ("A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment."). It is too late for such a motion now, with a motion for summary judgment fully briefed, to bring such a motion. Yet the plaintiff did not even attempt such a motion. Rather, he simply acted in his response as though Officer Decker was a defendant, which he is not. Only the plaintiff's claims against the other defendants will be considered by the court.

Second, the plaintiff argues that the discovery period in this case "fell woefully short in the Court's discretion and should be reopened." (Plaintiff's Memorandum Brief, p. 2). He contends that counsel was hired at the eleventh hour, less than a week before the discovery deadline. The plaintiff acknowledges that the court extended the discovery deadline by stipulation of the partes, but contends that the defendants' timely summary judgment motion was premature because "in hindsight, the extension of time should have been a minimum of six (6) motions." *Id.* at 7. He repeatedly notes that the court did not set a specific date for the naming of lay and expert witnesses and blames his failure to present evidence regarding the plaintiff's claims against the City of Kenosha on his argument that "[t]he plaintiff has not had adequate time for discovery and naming of witnesses.

In an order dated February 2, 2010, the court set new deadlines for the close of discovery and the filing of motions for summary judgment. It also noted that

no further extensions would be granted. However, in light of the changed circumstances of the plaintiff retaining counsel, the court approved the parties' Stipulation to Extend Discovery and Dispositive Motion Deadlines. The deadlines set forth in the court's May 3, 2010 order were the dates agreed to by the parties and presented to the court in a stipulation and proposed order. No party has brought a motion to extend those deadlines. Nor had the court been advised that they were in any way inadequate until the plaintiff's response to the defendants' motion for summary judgment. Even then, no motion was presented to the court, the plaintiff has simply made arguments in a memorandum brief. This is not the appropriate way to seek relief from the court. Accordingly, no relief can or will be granted.

**A.    Excessive Force Claims**

The plaintiff was allowed to proceed on excessive force claims against defendants Franklin, Larsen, Melichor, Alfredson. An arrestee's claim for excessive force is analyzed under the Fourth Amendment's objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397. The amount of permissible force depends on the specific situation, including "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396.

In determining whether an officer's use of force is reasonable, courts must balance the nature and quality of the intrusion upon the individual's Fourth Amendment rights against the countervailing government interests at stake. *Johnson v. LaRabida Children's Hosp.*, 372 F.3d 894, 898 (7th Cir. 2004). Reasonableness is judged from the perspective of whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer at the time. *Id.* When assessing whether the amount of police force was reasonable, the court looks to circumstances indicating: (1) the severity of the suspected crime; (2) whether the suspect posed an immediate threat to the officer on the scene or others; and (3) whether the suspect was actively resisting or attempting to evade arrest. *Id.*

The plaintiff asserts that the other officers had their guns drawn, but he does not allege that anyone other than Officer Decker tased him. The plaintiff also asserts that someone stepped on his head or neck, or possibly his hands, after he was on the ground. Such actions are mentioned in none of the police reports. Nor do the statements from witnesses in the neighborhood, which are otherwise favorable to the plaintiff and were presented to the court by the plaintiff, mention any police officer stepping on the plaintiff's head, neck or hands. They all simply say he was on his knee, then he was tased, fell forward and hit the cement driveway face first, causing his injuries. Then the statements mention the plaintiff being handcuffed and noticing

his face was bloody when the officers lifted the plaintiff up after the ambulance arrived.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting *Anderson*, 477 U.S. at 247-48) (emphasis in original). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott*, 550 U.S. at 380. The court draws all reasonable inferences in the plaintiff's favor, but concludes that no rational juror could believe that any of the officers stepped on the plaintiff's head, neck or hands after he fell to the ground. *See Johnson v. Moeller*, 269 Fed. Appx. 593, 595 (7th Cir.2008).

Despite the plaintiff's deposition testimony, the evidence in the record, including that which is favorable to the plaintiff, does not indicate that any officer stepped on the plaintiff's head, neck or hands after he fell to the ground. Thus, there is no evidence in the record that any of the individual defendants used any force against the plaintiff, let alone excessive force. Additionally, although Officer Decker is not a defendant in this action, the court concludes that the deployment of the taser was an objectively reasonable use of force to take down someone who was suspected in three shootings in the previous eight hours and was not fully compliant

with commands to get on the ground. The plaintiff's Fourth Amendment rights were not violated during his arrest on September 21, 2008.

**B.    Municipal Claims**

The plaintiff also was allowed to proceed on a policy claim against the City of Kenosha for its alleged failure to properly train and/or supervise Kenosha police officers in the proper use of force.

To hold the defendant municipality liable under Section 1983, the plaintiff must demonstrate the constitutional deprivation was caused by "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by officers." *Monell v. City of New York Department of Social Services*, 436 U.S. 658, 690 (1978). There must be a direct causal link between the alleged unconstitutional deprivation and the municipal policy or custom at issue. *City of Canton v. Harris*, 489 U.S. 378, 385 (1989). The plaintiff has provided no evidence to support his claim that a municipal custom or policy caused his injuries. The plaintiff concedes this in his response and, therefore, his policy claim must fail.

There are limited circumstances when "failure to train" may be a basis for municipal liability under § 1983. *City of Canton*, 389 U.S. at 388. However, inadequacy of police training may only serve as a basis for municipal liability where the failure to train amounts to deliberate indifference to rights of persons with whom the police come in contact. *Id.* The defendants argue that the plaintiff has no knowledge regarding the defendants' training and no expert witness who can testify

in support of this claim. There is evidence in the record that Officer Decker had been trained in the use of the taser prior to the date of this incident. The plaintiff suggests that the training was inadequate because Officer Decker was certified after just one class. However, he presents no evidence to support that inference.

The defendants submit that the training of police officers in Wisconsin is governed by state law. The Law Enforcement Standards Board prescribes minimum requirements for police officer training. *See* Wis. Stat. § 165.85(3). The plaintiff has presented no evidence that the Kenosha Police Department failed to comply with the state-mandated police officer training.

The Seventh Circuit's decision in *Tapia v. City of Greenwood*, 965 F.2d 336, 339 (7th Cir. 1992), is dispositive of the plaintiff's failure to train claim. In *Tapia*, the question was whether the defendant city had adequately trained police officers regarding procedures for warrantless searches. The city showed that it was in compliance with the minimum standards for training officers under Indiana law and that the officers involved had received such training. The court held that where a state imposed minimum training standards on municipalities, evidence showing adherence to those standards barred any finding that the city was deliberately indifferent to the need for better training. *Id.* Under *Tapia*, compliance by a municipality with such standards precludes a reasonable jury from upholding a charge of deliberate indifference.

## C. Qualified Immunity

The defendants also argue that they are entitled to qualified immunity because the amount of force used was not excessive given the plaintiff's actions. The Supreme Court of the United States has articulated a two-part test for qualified immunity: (1) whether the facts, taken in the light most favorable to the plaintiff, show that the defendants violated a constitutional right; and (2) whether the constitutional right was clearly established at the time of the alleged violation. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). The Supreme Court recently revisited *Saucier* and held that "because the two-step *Saucier* procedure is often, but not always, advantageous, the judges of the district courts and the courts of appeals are in the best position to determine the order of decision [that] will best facilitate the fair and efficient disposition of each case." *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 821 (2009).

Rather than demonstrating that his constitutional right to not be tased was clearly established, the plaintiff argues that qualified immunity "is only applicable when a jury finds governmental officials liable for personal injuries to individuals caused by acts of governmental officials in the court of official capacity that requires judgment of discretion." (Plaintiff's Memorandum Brief, p. 8). The plaintiff further asserts that "[i]mmunity is normally asserted at the conclusion of trial when government officials are found to be culpable or liable for money damages, not by affidavit." *Id.* These assertions are not correct. Qualified immunity is the ability to

be free from suit, not merely a defense from liability, and, therefore, the question of immunity should be decided at the earliest possible stage. *Jacobs v. City of Chicago*, 215 F.3d 758, 765 n.3 (7th Cir. 2000). In this case, though, because the court has determined that the plaintiff's constitutional rights were not violated, the court need not consider whether the defendants are entitled to qualified immunity.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #26) be and the same is hereby **GRANTED**, and this action be and the same is herewith **DISMISSED with prejudice**.

The Clerk of Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 18th day of July, 2011.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge